UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRYL E. DESJARDINS,

                             Plaintiff,

                v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                             Defendant.

**DECISION
and
ORDER**

**17-CV-00168F**
(**consent**)

_____

APPEARANCES:            LAW OFFICES OF KENNETH R. HILLER, PLLC
                                  KENNETH R. HILLER, and
                                  AMY C. CHAMBERS, of Counsel
                                  Attorney for Plaintiff
                                  6000 North Bailey Avenue
                                  Suite 1A
                                  Amherst, New York 14226

                                  JAMES P. KENNEDY, JR.
                                  UNITED STATES ATTORNEY
                                  Attorney for Defendant
                                  Federal Centre
                                  138 Delaware Avenue
                                  Buffalo, New York 14202
                                        and
                                  ELIZABETH ROTHSTEIN,
                                  Special Assistant United States Attorneys, of Counsel
                                  United States Attorney's Office
                                  c/o Social Security Administration
                                  Office of General Counsel
                                  26 Federal Plaza – Room 3904
                                  New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn W. Colvin as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 14). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on September 25, 2017 (Dkt. 11), and by Defendant on November 24, 2017 (Dkt. 12).

## BACKGROUND

Plaintiff Darryl E. Desjardins ("Plaintiff"), brings this action under Titles II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on January 2, 2013, for Disability Insurance Benefits under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits"). Plaintiff alleges he became disabled on March 10, 2004, based on spinal injury and disc degradation, back injury, shoulder problem, neck problem, moodiness attributed to pain, constipation caused by medications, celiac disease, asthma, chronic hernia problem, and intermittent poor appetite, and has not worked since September 19, 2005. AR[2] at 186, 190. Plaintiff's application was denied on July 30, 2013, AR at 104-09, and at Plaintiff's timely request, on March 30, 2015, a hearing was held before administrative law judge Stephen Cordovani ("ALJ Cordovani"). AR at 48-73. Appearing and testifying at the hearing were Plaintiff, with legal representation, and vocational expert ("VE") Jay A. Steinbrenner ("VE Steinbrenner").

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on July 26, 2017 (Dkt. 7).

On June 5, 2015, the ALJ issued a decision denying Plaintiff's claim, AR at 27-43 ("the ALJ's decision"), which Plaintiff appealed to the Appeals Council, with Kelly Laga, Esq. appointed to represent Plaintiff on his administrative appeal. AR at 22-23. On December 28, 2016, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-5. On February 23, 2017, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On September 21, 2017, Plaintiff filed a motion for judgment on the pleadings (Dkt. 11) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 11-1) ("Plaintiff's Memorandum"). On November 24, 2017, Defendant filed a motion for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to the Local Standing Order on Social Security Cases (Dkt. 12-1) ("Defendant's Memorandum"). In further support of Plaintiff's Motion, Plaintiff filed on December 18, 2017, Plaintiff's Reply (Dkt. 13) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED. The Clerk of Court is directed to close the file.

## **FACTS**[3]

Plaintiff Darryl E. Desjardins ("Plaintiff" or "Desjardins"), born November 12, 1976, was 27 years old as of March 10, 2004, his alleged disability onset date ("DOD"),

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

3

and 38 years old as of June 5, 2015, the date of the ALJ's decision. Plaintiff, who lives with his minor child in the lower level apartment at his mother's home, AR at 53, has a high school education and attended two years of college, *id.* at 42, 54, 291, has a driver's license, *id.* at 53, and previously worked in customer service, and at a hardware store, *id.* at 54-55, 100-09, 173-214, 225-234, but has not worked since September 19, 2005. *Id.* at 190. It is undisputed that Plaintiff suffers from a myriad of physical complaints, including lumbar spine degenerative disc disease, chronic low back pain, chronic intermittent neck pain, asthma, post-status hernia repair, celiac disease, right shoulder problem, and an adjustment disorder with mixed anxiety and depressed mood. Plaintiff largely attributes his spine impairments to a motor vehicle accident ("MVA") on May 12, 2004. *Id.* at 256.

Diagnostic testing during the relevant time period, *i.e.*, from March 10, 2004 through March 30, 2007, for SSDI, and from April 9, 2013 through June 5, 2015, for SSI,[4] show Plaintiff has broad based disc herniation at L5-S1 with impingement, facet arthropathy, degenerative disc disease, and bilateral foraminal stenosis, AR at 281 (August 15, 2011 MRI of lumbar spine), lumbar osteoarthritis and lumbar disc degeneration most pronounced at L5-S1, *id.* at 387 (February 14, 2013 X-rays of lumbar spine), and central disc herniation at C4-C5, and right-sided disc herniation at C5-C6, impinging on the right C6 nerve root, *id.* at 312 (October 16, 2014 MRI of cervical spine). Although Plaintiff consistently reported back pain radiating into his legs, accompanied by numbness and tingling sensations, examining sources repeatedly

---

[4] With respect to Plaintiff's application for SSDI under Title II, Plaintiff was required to establish disability by March 30, 2007, his date last insured. With respect to Plaintiff's application for SSI under Title XVI, the relevant period commenced with the filing of Plaintiff's application on April 9, 2013, and Plaintiff was required to establish he was disabled by the date of the ALJ's decision, here, June 5, 2015.

4

found Plaintiff with a normal gait, able to rise on his heels and toes, intact reflexes, normal extremity strength, and without need for assistance getting on and off the examination table.

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has

instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.      Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[6] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.
[6] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

applicant's "residual functional capacity," which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for SSDi through March 31, 2007, AR at 30, Plaintiff did not engage in substantial gainful activity since March 10, 2004, his alleged disability onset date, *id.*, that Plaintiff suffered from no severe impairments prior to March 31, 2007, his date last insured, *id.* at 30-33, has since suffered from the severe impairments of low back pathology and a neck impairment, *id.* at 33-36, but that Plaintiff's medically determinable impairments of asthma, hernia, celiac disease, right shoulder problems, and adjustment disorder with mixed anxiety and depressed mood do not have more than a minimal impact on Plaintiff's ability to do work activities, *id.*, at 33-36, that Plaintiff does not have

7

an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1, *id.* at 36, and that Plaintiff retains the RFC to perform light work except for no overhead reaching, occasional ramps, stairs and balancing, no kneeling, crouching, or crawling, no ladders, ropes or scaffolds, avoiding concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants, and no working around hazards such as unprotected heights or moving mechanical parts. *Id.* at 36-41. The ALJ further found Plaintiff unable to perform any past relevant work, *id.* at 41, but, based on his age, education, work experience, and RFC, there exist in significant numbers within the national economy jobs Plaintiff can perform, *id.* at 42-43, such that Plaintiff is not disabled as defined under the Act. *Id.* at 43. Plaintiff does not contest the ALJ's findings with regard to the first step of the five-step analysis, but argues that at step two, and all subsequent steps, the ALJ did not consider the combined effects of all of Plaintiff's physical and mental impairments, improperly evaluated Plaintiff's spine disorder under Listing Impairment 1.04,[7] and engaged in selective reading of opinion evidence such that the ALJ's determination of Plaintiff's RFC is not supported by the record,[8] Plaintiff's Memorandum at 16-23, ALJ failed to properly evaluate medical opinions, *id.* at 23-28, and new and material evidence related to Plaintiff's condition was not considered by the Appeals Council. *Id.* at 28-30. There is no merit to any of these arguments.

---

[7] Whether Plaintiff meets the criteria for a Listing Impairment is a step three consideration.
[8] Despite arguing the ALJ's alleged error at step two permeates the remaining steps, the court does not construe Plaintiff's papers as challenging the ALJ's determination at step four that Plaintiff cannot perform his PRW, AR at 41, because such construction would imply Plaintiff concedes he is not disabled.

With regard to Plaintiff's assertion that the ALJ failed, at step two, to consider evidence regarding Plaintiff's chronic physical impairments and pain, mental disorders, MVA injuries, arthritis, asplenism (absence of normal spleen function), neuropathy, right shoulder bursitis, radiculopathy, herniated lumbar and cervical discs, spinal stenosis, and a GAF[9] of 55, Plaintiff's Memorandum at 16, the step two analysis is intended to screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and an impairment which the medical evidence establishes poses no more than a minimal effect on the claimant's ability to work is non-severe. *Rosario v. Apfel*, 1999 WL 294727, at *5 (E.D.N.Y. March, 19, 1999) (quoting SSR[10] 85-28, 1985 WL 56856). A plain review of the medical record supports the ALJ's determination that none of these impairments has more than a minimal effect of Plaintiff's ability to work.

In particular, the record establishes, as the ALJ found, that after March 31, 2007, Plaintiff's last date insured for purposes of Title II, Plaintiff's low back pathology and neck impairment, which include herniated lumbar and cervical discs and spinal stenosis Plaintiff attributes to his MVA, cause more than minimal functional limitations to Plaintiff's ability to perform basis work activities and thus are, by definition, severe. AR at 33. Prior to March 31, 2007, the only medical evidence in the record pertaining to Plaintiff's spine is a May 12, 2004 X-ray of Plaintiff's cervical spine, taken after the MVA, which shows "unremarkable cervical spine," AR at 255, with Plaintiff being diagnosed with "cervical muscle strain." *Id.* at 253. The ALJ's determination that Plaintiff's severe

---

[9] A Global Assessment of Functioning or "GAF" score between 51 and 60 equates with moderate symptoms (i.e., flat affect and circumlocutory or roundabout speech, occasional panic attacks), or moderated difficulty in social, occupational, or school functioning (*i.e.*, few friends, conflicts with peers or co-workers).
[10] "SSR" refers to "Social Security Ruling."

9

impairments of low back pathology and neck impairment did not manifest until after Plaintiff's date last insured for purposes of SSDI under Title II, and thus may be considered only with regard to Plaintiff's claim for SSI under Title XVI, is supported by substantial evidence in the record. Similarly, Plaintiff's arthritis diagnosis is based on February 14, 2013 lumbar spine X-rays showing osteoarthritis and lumbar disc degeneration at L5-S1, AR at 387, and, as such, is a component of Plaintiff's low back pathology the ALJ considered as a severe impairment in connection with Plaintiff's SSI claim. Likewise, Plaintiff's neuropathy and radiculopathy are components of Plaintiff's low back pathology and thus considered severe impairments for purposes of Plaintiff's SSI claim.

As for Plaintiff's mental disorder and GAF of 55, in June 2012, Plaintiff had mild depression, for which Plaintiff "opted out" of care. AR at 394. In a June 26, 2013 Psychiatric Evaluation, Rachel Hill, Ph.D. ("Dr. Hill"), diagnosed adjustment disorder with mixed anxiety and depressed mood, a "psychiatric problem that does not appear to be significant enough to interfere with his ability to function on a daily basis," *id.* at 294, and Plaintiff's prognosis "psychiatrically is good." *Id.* This is consistent with Plaintiff's hearing testimony that he was not under psychiatric care. AR at 68. As for Plaintiff's assertion that references in the record to Plaintiff having "angry outbursts" and being frustrated should be interpreted as evidence that Plaintiff's mental health adversely affected Plaintiff's ability to work, Plaintiff's Reply at 13, Plaintiff points to no case law supporting this novel idea and the court's research reveals none. Accordingly, the ALJ's failure to determine Plaintiff has a mental disorder constituting a severe impairment is supported by the record.

As for Plaintiff's asplenism, the record establishes Plaintiff underwent surgical removal of a ruptured spleen in 1986, AR at 31, but nothing in the record indicates the removal of Plaintiff's spleen posed any limitations to Plaintiff's ability to work. Similarly, other than being diagnosed with "celiac disease, stable," AR at 286, nothing in the record remotely suggests the disease interferes with Plaintiff's ability to work.

Despite Plaintiff's right shoulder and bursitis diagnosis based on a November 20, 2012 X-ray showing right shoulder impingement with possible small rotator cuff tear attributed to a 20-year old football injury, AR at 397, which the ALJ observed, *id.* at 30-32, Plaintiff retained "good strength" in his shoulder, *id.* at 397. This is consistent with the earlier findings upon consultative examination by Hongbiao Liu, M.D. ("Dr. Liu"), on August 9, 2012, that Plaintiff had full range of motion of his shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally, intact hand and finger dexterity, and bilateral grip strength of 5/5. *Id.* at 284-86.

Nor did the ALJ fail to consider the combined effects of Plaintiff's impairments as required. Rather, the ALJ found with regard to Plaintiff's Title II SSDI claim, prior to Plaintiff's last date insured, Plaintiff had, at most, a combination of slight abnormalities resulting in no more than a minimal effect on his ability to work. AR at 30. With regard to Plaintiff's Title XVI SSI claim, the ALJ found Plaintiff had the severe impairments on low back pathology and a neck impairment, as well as non-severe impairments of asthma, hernia, celiac disease, right shoulder problems, and adjustment disorder, with mixed anxiety and depressed mood, but the combination of such impairments only minimally affected Plaintiff's ability to work. *Id.* at 33. Accordingly, the ALJ did not fail to consider the combined effects of Plaintiff's impairments. Nevertheless, even if the ALJ

did fail to consider the combined effects of all of Plaintiff's impairments, both severe and nonsevere, such error is harmless where, as here, the ALJ proceeded to address all such impairments in the remaining sequential steps. *See Stanton v. Astrue*, 370 Fed.Appx. 231, 233 n. 1 (2d Cir. 2010) (noting remand not warranted where the ALJ identified severe impairments at step two, and proceeded to consider at the subsequent sequential steps the combination of all impairments and the combined effects of all symptoms). That the ALJ included in his RFC assessment Plaintiff's had limitations beyond those pertaining to his back impairment, including no overhead reaching, occasional ramps, stairs and balancing, no kneeling, crouching, or crawling, no ladders, ropes or scaffolds, avoiding concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants, and no working around hazards such as unprotected heights or moving mechanical parts, establishes the ALJ considered the effects of Plaintiff's asthma, right shoulder impairment, and hernia. *Id.* at 36-41.

Accordingly, the ALJ's determination at step two that only Plaintiff's low back pathology and neck impairment constitute severe impairments, and only with regard to Plaintiff's claim for SSI benefits under Title XVI is supported by substantial evidence in the record.

Insofar as Plaintiff maintains the ALJ, at step three, improperly evaluated Plaintiff's spine disorder under Listing Impairment § 1.04, Plaintiff's Memorandum at 21-23, Plaintiff's Reply at 10, disability based on Listing Impairment § 1.04 requires, as relevant here, spinal stenosis, osteoarthritis, degenerative disc disease, or facet arthritis, resulting in compromise of a nerve root, with (a) evidence of nerve root compression and positive straight-leg raising test in both sitting and supine positions, or

12

(b) spinal arachnoiditis, or (c) lumbar spinal stenosis resulting in pseudoclaudication and an inability to effectively ambulate.  20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 1.04.  Significantly, to be disabled at step three, an impairment must meet all of the Listing Impairment's criteria, "no matter how severely" the impairment manifests some of the criteria.  *See Crotty v. Commissioner of Social Security*, 2018 WL 5076923, at * 5 (W.D.N.Y. Oct. 18, 2018) (citing, *inter alia*, *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  Here, although the record establishes Plaintiff with disc herniation at L5-S1 with impingement, facet arthropathy, degenerative disc disease, and bilateral foraminal stenosis, AR at 281 (August 15, 2011 MRI of lumbar spine), lumbar osteoarthritis and lumbar disc degeneration most pronounced at L5-S1, *id*. at 387 (February 14, 2013 X-rays of lumbar spine), and central disc herniation at C4-C5, and right-sided disc herniation at C5-C6, impinging on the right C6 nerve root, *id*. at 312 (October 16, 2014 MRI of cervical spine), and Plaintiff consistently reported back pain radiating into his legs, accompanied by numbness and tingling sensations, there is no evidence of any positive straight leg raising test in both sitting and supine positions, spinal arachnoiditis, or pseudoclaudication and an inability to effectively ambulate; as such, the record supports the ALJ's determination that Plaintiff cannot satisfy the criteria for disability based on Listing Impairment 1.04.

With regard to the ALJ's assessment of Plaintiff's RFC, there is no merit to Plaintiff's argument, Plaintiff's Memorandum at 20, that the ALJ failed to develop the record by recontacting Luis Melgar, M.D. ("Dr. Melgar"), consultative physician Donna Miller, D.O. ("Dr. Miller"), and psychologist Dr. Hill, the record establishes that reports from these sources were already in the record, were considered by the ALJ, *see* AR at

30-35, and Plaintiff fails to explain the relevancy of a retrospective medical assessment from any of these sources. Significantly, both Dr. Hill and Dr. Miller were consultative sources who examined Plaintiff on only one occasion and, as such, did not have any treating relationship with Plaintiff. Further, the ALJ is required to develop the record by recontacting treating sources only where the evidence in the record is inadequate to permit the ALJ to make a disability determination, *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (holding ALJ not required to develop the record by obtaining retrospective reports from claimant's physicians where reports from such physicians already in the record supported the ALJ's disability determination), in contrast to the instant case where the ALJ found sufficient evidence to support his disability determination. Moreover, with regard to chiropractor Brian Veros (Dr. Veros"), and Social Worker Mr. Ellen, such sources are not medical sources as defined under the Act. *See Monette v. Colvin*, 654 Fed.Appx. 516, 519 (2d Cir. July 7, 2016) (statement by claimant's social worker regarding severity of Plaintiff's impairments at step 2 of the five-step analysis "was not from an 'acceptable medical source'"); *Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995) (under the disability entitlement regulations, a chiropractor is not an "acceptable medical source" whose opinion reflects judgment about the nature and severity of the claimant's opinion, but an "other source" whose information may aid in understanding how the claimant's disability affects his ability to work).

Nor is there any merit to Plaintiff's argument, Plaintiff's Memorandum at 28 & nn. 25-26, that the ALJ improperly assessed Plaintiff as less than credible. Rather, the record is replete with inconsistencies between Plaintiff's claimed effects of his impairments and Plaintiff's medical records. In particular, although Plaintiff insists he is

significantly limited in his ability to sit for more than 10 to 15 minutes, cannot walk more than 100 feet, has difficulty bending, AR at 57-60, examining sources consistently found Plaintiff with a normal gait, able to rise on his heels and toes, intact reflexes, normal extremity strength, and without need for assistance getting on and off the examination table. *See, e.g.*, AR at 278 (physical examination by Dr. Egnatchik on August 9, 2011, finding Plaintiff has a normal gait, and able to rise on his heels and toes); AR at 284 (consultative examination by Dr. Liu on August 9, 2012, finding Plaintiff walked with normal gait, had normal stance, needed no help changing for exam or getting on and off exam table, and was able to rise from a chair without difficulty). On one occasion, despite assertions of chronic back pathology and pain, Plaintiff became upset upon learning a medical emergency would delay his appointment with his then treating physician Joseph F. Kij, M.D. ("Dr. Kij"), and "drove off fast 'like a maniac.'" AR at 324. After Dr. Kij completed a disability report on May 1, 2013, indicating Plaintiff, despite permanent disabling back pain caused by degenerative disc disease, could perform sedentary work including occasionally lifting 10 lbs., standing and walking 2 hours a day, sitting six hours a day, and using his hands for manipulation, AR at 404, on July 26, 2013, Dr. Kij reported Plaintiff presented in his office protesting the disability report, explaining Dr. Kij's assessment of Plaintiff as able to perform sedentary work was based on Plaintiff's "statements on several occasions that he had been gainfully employed as a local video rental store for many months despite claiming disability payments, and also on observations of his motor activity in the office," AR at 398, as well as on Plaintiff's unannounced visit on another occasion protesting Dr. Kij's opinion Plaintiff could walk more than 500 feet to public transportation, which Dr. Kij "based on

observations of patient walking briskly and seemingly comfortably to and from office." *Id.* at 399. Dr. Kij also questioned Plaintiff's sincerity regarding a desire for frequent neurological or neurosurgical consultations to determine treatment status, but then indicating he preferred to wait for new treatments to be developed. *Id.* This is consistent with the fact that although treating neurologist James G. Egnatchik, M.D. ("Dr. Egnatchik"), recommended anterior lumbar fusion to treat Plaintiff's low back pathology in August 2011, AR at 280-81, and on December 19, 2013, *id.* at 238, Plaintiff was not ready to proceed with surgery on either occasion, and demonstrated a normal gait during examinations on December 26, 2013, and January 27, February 26, and March 31, 2014. *Id.* at 431, 434, 441, and 444. Dr. Egnatchik also repeatedly found Plaintiff with intact sensation and knee reflexes despite absent ankle jerks, and full motor strength of all extremities except quadricep which were 3/5, and straight leg raising was negative on December 19, 2013. *Id.* at 438-39.

Moreover, after becoming upset with Dr. Kij, Plaintiff began treating with Dr. Melgar who, between June 18, 2013, and March 31, 2014, repeatedly diagnosed Plaintiff with intervertebral disc disorder lumbar with myelopathy and spinal stenosis lumbar region, with no significant musculoskeletal or psychological objective findings, AR at 414-45, yet on November 27, 2013, Dr. Melgar reported Plaintiff to be "100% disabled," unable to lift, or to sit or stand for more than 30 minutes based on herniated discs in his lumbar spine and spinal stenosis. AR at 409. Because this report was not supported by Dr. Melgar's own treatment reports, the ALJ properly found it not credible. *See Augustine v. Commissioner of Social Security*, 2016 WL 5462836, at * 16 (W.D.N.Y. Sept. 28, 2016) ("An ALJ may properly reject a treating physician's opinion

16

where it is unsupported by medical evidence in the record.") (citing *Bulavinetz v. Astrue*, 663 F.Supp.2d 208, 211 (W.D.N.Y. 2009)).

Accordingly, there is no merit to Plaintiff's argument that the ALJ erred in reading the relevant opinion evidence as to Plaintiff's conditions, or failing to develop the record, such that the ALJ's determination of Plaintiff's RFC is not supported by the record.

Nor was the Appeals Council required to accept and consider additional documentation submitted by Plaintiff while the ALJ's Decision was before it on appeal. The relevant regulations provide that the Appeals Council must consider evidence submitted after the ALJ's decision, while the appeal is pending, so long as the evidence is new, material, and related to the period on or before the ALJ's decision. 20 C.F.R. § 404.970(a)(5). Here, however, the new material in question, *i.e.*, office treatment notes from Pinnacle Orthopedic and Spine Specialists, pertains to the time period March 1, 2016 through March 17, 2016, and relates to Plaintiff's condition after the ALJ's June 5, 2015 decision well after the ALJ's decision on June 5, 2015. Accordingly, the material was not required to be considered by the Appeals Council.

The ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record, and the VE's testimony that sufficient job existed in the national economy that Plaintiff, despite being limited to light, unskilled work, could perform, is further substantial evidence supporting the ALJ's determination that Plaintiff is not disabled.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 11) is DENIED; Defendant's Motion (Dkt. 12) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.

                                             /s/ *Leslie G. Foschio*
                               _____
                                               LESLIE G. FOSCHIO
                             UNITED STATES MAGISTRATE JUDGE

DATED:       November 13, 2018
                 Buffalo, New York